# WENDELIN HUSCHLE

## v.

# HARRY MORRIS.

*Replevin—Sale—Chattel Mortgage—Retention of Possession by Mortgagor—Evidence—Instructions.*

1. The jury may be instructed to find for defendant, where the evidence given, with all the inferences that they can justifiably draw from it, is so far insufficient to support a verdict for plaintiff, that such a verdict, if returned, must be set aside.

2. In an action of replevin brought to gain possession of a stock of goods attached as the property of another, the contention being that the same were previously sold and conveyed to plaintiff, this court holds that there was no such transfer thereof prior to the levy of the writs of attachment as was necessary to sustain the title of the claimant as against the attaching creditors; that in view of the chattel mortgage thereon running to said claimant, his allowing the mortgagor to remain in possession upon the understanding that he was to continue retailing the goods so covered, rendered the mortgage fraudulent as to said creditors; that the mortgage having been made on the day of the alleged sale, was properly admitted in evidence as a part of the transaction; that it was proper to allow the cross-examination of the mortgagor as to the same; and that, in the light of the evidence, it was not erroneous on the part of the trial court to direct the return of a verdict for defendant.

[Opinion filed November 1, 1889.]

APPEAL from the City Court of East St. Louis, St. Clair County; the Hon. B. H. CANBY, Judge, presiding.

Mr. WILLIAM P. LAUNTZ, for appellant.

Mr. ALEXANDER FLANNIGEN, for appellee.

The chattel mortgage in this case as to the store of goods was fraudulent and void as a matter of law.

Where there is license to sell, whether such provision is disclosed by the mortgage or outside of it, as a matter of law the mortgage is void. Dunning v. Mead, 90 Ill. 376; Greenebaum v. Wheeler, 90 Ill. 296; Davis v. Ransom, 18 Ill. 396; Barnett v. Fergus et al., 51 Ill. 352; Simmons v. Jenkins, 76 Ill. 479.

This transaction, as against creditors, lacks one of the first essentials of a valid sale, viz., delivery of possession.

This property was never for a moment out 'of the actual possession of Recker until it was levied upon by appellee and others under suits of attachment. All sales of personal property, where possession is permitted to remain with the vendor, are fraudulent *per se* and void as to creditors and subsequent purchasers, unless retaining possession be consistent with the deed or bill of sale. Rozier v. Williams, 92 Ill. 187; Lefever v. Mires, 81 Ill. 456; Broadwell v. Howard, 77 Ill. 305; Dunlap v. Berry, 4 Scam. 327; Thompson v. Willhite, 81 Ill. 356; Lewis v. Swift, 54 Ill. 436; Ticknor v. McLelland, 84 Ill. 471; Burnell v. Robertson, 5 Gilm. 282; Curran v. Bernard, 6 Ill. App. 341; McCann v. Meyer, 4 Ill. App. 376.

In Wells v. Whittaker, 4 Ill. App. 381, the court say: "No sale of personal property as to third persons will be effectual to pass the title unless actual delivery accompanies the sale, or unless there be some memorandum in writing acknowledged and recorded in accordance with the provisions of the chattel mortgage act." There was no such delivery as the law required in this case. No act was done to notify the public that any change of ownership had taken place. Everything that was

Huschle v. Morris.

done was in a secret manner.   No one present but the appel-
lee and Recker.

Any absolute sale of personal property, where it remains
with the vendor, if it is that character of property that is
capable of being removed, is fraudulent in law as to creditors
and subsequent purchasers, notwithstanding the sale may have
been in good faith and for an adequate consideration.   Thomp-
son v. Wilhite, 81 Ill. 358.

In Ticknor v. McLelland, 84 Ill. 474, the court say:   "The
policy of the law in this State will not permit the owner of
personal property to sell it and still continue in possession of
it.   Possession being one of the strongest evidences of title
to personal property, if the real ownership is suffered to be in
one, and the apparent ownership in another, the latter gains
credit as owner, and is enabled to practice deceit upon man-
kind.   It is the well established doctrine of this court, that
an absolute sale of personal property, where the possession is
permitted to remain with the vendor, is fraudulent *per se* and
void as to creditors and purchasers."

In Thompson v. Yeck, 21 Ill. 73, the court say: · "This
court has adopted the rule in Thornton v. Davenport, 1 Scam.
266, and in several other cases, that all conveyances of goods·
and chattels, when the possession is permitted to remain with
the donor or vendor, is fraudulent of itself and void as to
creditors and purchasers, unless the conveyance itself stipulates
for such retaining possession by the vendor or donor, and the
same was held in a case arising under our chattel mortgage
act."   Reed v. Eames, 19 Ill. 595.

In all cases the change of possession must be substantial and
exclusive.   In Rhines v. Phelps, 3 Gilm. 464, the court say:
" In the case of Thornton v. Davenport, 1 Scam. 296, the rule
is held to be that all conveyances of goods and chattels, where
possession is permitted to remain with the vendor, are fraudu-
lent *per se* and void as to creditors and purchasers, unless the
retaining of the possession be consistent with the deed and
that absolute sale of personal property."

REEVES, P. J.   George H. Recker, prior to August 8, 1887,
was the owner of a stock of groceries, provisions, etc., in East

St. Louis.  On that date he claims he sold the stock of goods to his father-in-law, appellant.  Shortly afterward, the stock was levied upon by writs of attachment at the suit of creditors of Recker.  Appellee made the levy as a constable; appellant replevied the goods from appellee, and this is that suit.  The result of the trial in the city court was a judgment in favor of appellee.  Upon the trial the city court instructed the jury to find a verdict for the defendant, and the giving this instruction is the chief complaint of appellant.

We understand the rule to be, where the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is so far insufficient to support a verdict for the plaintiff that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for defendant.  There may be some evidence tending to support plaintiff's case, but if this evidence be such that the jury could not, in the eye of the law, find in his favor, the court may instruct the jury to return a verdict for the defendant.  Simmons v. C. & T. R. R. Co., 110 Ill. 340.

It remains to be determined whether such an instruction should have been given in this case.

Recker, after detailing his indebtedness to appellant, testified, in answer to a question as to what he did when he turned the store over to appellant—"I owed him this amount right along, and later on he asked me for some way of being secured.  Of course the amount was getting large, and I guess—I don't know whether he was getting afraid or not; at least he asked to be secured.  I said I had no objection, so I asked if a note would do, and he says no, that is not sufficient, that I should give him something else; so I says, make out a mortgage with a note, and so on the 8th day of August we made out a note and mortgage, and I asked him what should be done with the store.  Then he says he would have to—well he thought I had better run it as his agent because he did not understand the business."  The note and mortgage above referred to was introduced in evidence and proved to be a note for $1,000, dated August 8, 1887, due two years after date, made by Recker to appellant, and the mortgage, a chattel mortgage,

given to secure this note on the stock of goods in the store.
The proof further shows that Recker continued in charge of
the store, selling the goods from the stock, with no visible
change in the possession. Recker further testified that appel-
lant was still the holder of the note, and that no portion of it
had been paid. Appellant testified in answer to the question,
who was in possession of the store at the time the writs of
attachment were levied—"I told Mr. Recker, you understand
the business, you can run the store. I made no other bar-
gain, but I don't know law, so I told him just to keep on
running the store. I told him to pay his debts, that was all I
cared. Recker run the store in my name as agent; the bills
all come to me what have to be paid. He paid the bills, but
the bills first be sent to me."

It must be remembered that the writs of attachment were
levied very shortly after the chattel mortgage was given, and it
very clearly appears from the cross-examination of appellant
that what he says as to Recker running the store as his agent,
and the bills for goods bought being sent to him, made out
in his name, all relates to the condition of things that existed
after the levy of the writ of attachment and the replevin
of the goods by appellant. Conceding all that this evidence
tends to prove, it does not seem that there was any such trans-
fer of the possession of the stock of goods from Recker to
appellant prior to the levy of the writs of attachment, as was
necessary to sustain the title of appellant to the goods as
against the creditors of Recker. It clearly appears that these
parties supposed that the chattel mortgage, which provided
for Recker retaining the possession of the goods, afforded
appellant the security which he desired. As to the stock of
goods, from which sales were being made from day to day,
the chattel mortgage did not protect appellant against the
claims of creditors of Recker. Permitting the possession of
the goods to remain in Recker, with the express understand-
ing that he was to continue the business of selling the goods
at retail, rendered the chattel mortgage fraudulent as to the
creditors of Recker. The making and recording of the
chattel mortgage fixed the character of the transaction

between Recker and Huschle, and the testimony of these
parties, instead of changing the transaction from a mortgage
to a sale, rather corroborates what the making and recording
of the mortgage stamped the character of the transaction to
be.    But waiving this, upon the question of the transfer of
the possession of the stock of goods, on the 8th day of
August, all the evidence with all the inferences that a jury
could justifiably draw from it, is so far insufficient to sustain
a finding that there was such a change of possession as the
law requires as against creditors of Recker, that such a find-
ing, if made, would have to be set aside.    In this condition of
the evidence it was proper for the court to direct the jury to
return a verdict for the defendant.

It is also contended that the trial court erred in permitting
the chattel mortgage to be given in evidence, and in allowing
appellee to cross-examine Recker in reference to it.    It is
shown that the chattel mortgage was given on the same day
that the alleged sale of the stock took place, and was very
properly allowed to go in evidence as part of the transac-
tion between the parties on that day.    It was the very strong-
est evidence to contradict the claim of an absolute sale.
Recker had stated in his examination in chief that he had, on
August 8th, given appellant a note and mortgage, and this
statement gave appellee the right to cross-examine him fully
and particularly in regard to it.

Finding no error in the record of the proceedings of the
city court its judgment is affirmed.

*Judgment affirmed.*